UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Wells Fargo Bank, National Association**, as
Pool A Special Servicer for LaSalle Bank,
National Association, as Indenture Trustee for
the Holders of MSDWMC Owner Trust 2000-F1
Notes, Participating Interests and Owner Trust
Certificates, and MSMC Loan Special Servicer
for LaSalle Bank, National Association, as
Indenture Trustee for MSDWMC Owner Trust
2003-F1 Notes, Participating Interests and Owner
Trust Certificates,

                          Plaintiff,

             v.

**Grand Star, LLC and Grand Star Realty,
LLC,**

                          Defendants.

RECEIVED

2006 MAY 30  A 11: 49

3411

Case No. 06 CV 3414 (RCC)

2:06mc 3320-W

## SUPPLEMENTAL ORDER APPOINTING RECEIVER

The Court having considered the Plaintiff's Original Complaint and Application for the

Appointment of a Receiver (the "Complaint"), the Expedited Motion for Appointment of a

Receiver, ("Motion"), the Declaration of Lynn E. Judell dated May 8, 2006, the Affidavit of

Stephen Leon, sworn to on May 5, 2006, and the arguments of counsel made at the hearing on

May 12, 2006, and having been advised by counsel for Plaintiff that all parties, including

Intervenor Hardee's Food Systems, Inc. approve of the form of this Order. and good cause

appearing therefore:

    IT IS HEREBY ORDERED that:

    1.    This Court has jurisdiction over Defendants Grand Star, LLC, Grand Star Realty,

LLC and Intervenor Hardee's Food Systems, Inc. ("HFS"), and the subject matter herein.

1

2.    Pursuant to the Court's May 17 Order endorsing the Letter Agreement dated May 17, 2006, between Wells Fargo and HFS ("Letter Agreement"), William J. Hoffman of Trigild, Incorporated was appointed to act as Receiver in this action, to take possession, custody, and control of the Collateral and Collateral Revenue described in the Letter Agreement and the Security Agreement, except for the Leasehold Sites and related property released to HFS pursuant to the Letter Agreement, including the Fee Sites, defined in the Letter Agreement and identified on Exhibit A, attached hereto and incorporated herein by reference ("the Receivership Estate"). ("Property" means the Fee Sites identified on Exhibit A. ). (A copy of the Letter Agreement is annexed hereto as Exhibit B and incorporated herein by reference.)

3.    Per the Letter Agreement, HFS granted the Receiver the right to operate the Property as "Hardee's" restaurants" pursuant to a temporary license to be executed on or before May 27, 2006. In the interim, HFS has given the Receiver permission to operate the Property as "Hardee's" restaurants."

4.    Before performing his duties, the Receiver shall execute a receiver's oath. Within three days of this appointment, the Receiver shall also post a bond from an insurer in the sum of $50,000, conditioned upon the faithful performance of the Receiver's duties. The Receiver's Bond and the Oath of the Receiver may be filed by facsimile transmission and this Order shall become effective upon the Court's receipt of such facsimile transmission provided, however, that the Receiver replace the facsimiles with originals within seven days of filing.

5.    The fees of the Receiver shall be in accordance with the schedule of receivership fees set forth in Exhibit C, attached hereto and incorporated by reference herein.

6.    The Receiver shall take immediate and exclusive possession, custody and control of the Receivership Estate and the Property including, without limitation, the business operated

2

by Defendants on the Property (whether such premises be managed by the named Defendants or their agents) and all monies therefrom, all equipment, fixtures, furnishings, records and inventory, all assets, royalties, rents, receivables, accounts, deposits, equities, and profits.

7.    Subject to the Letter Agreement, the Receiver shall care for, preserve and maintain the Property make such repairs as are needed to keep the same in good condition, incur any expenses necessary for the care, preservation and maintenance of the Property and shall pay the costs of such repairs from funds of the receivership to the extent there are funds available.

8.    The Receiver is hereby given the powers and authority provided by law or customarily held by federal equity receivers and reasonably necessary to accomplish the purpose of this receivership including, without limitation, the specific power to:

A.    Subject to the Letter Agreement, perform all services and take all actions necessary or advisable to carry on, operate, manage, care for, maintain, repair, insure, protect and preserve (collectively "Manage") the Property and the Receivership Estate, and perform any and all other duties typically performed by a chief executive officer, without further order of the Court.

B.    Maintain, protect, collect, sell, liquidate, or otherwise dispose of Property, including in connection with a sale of associated real property, provided, however, that solely with respect to any real Property or tangible personal Property having a value in excess of $50,000, the Receiver shall not sell or otherwise dispose of such Property without prior court approval for such sale or other disposition, and further provided that any sale or disposition of the Property shall be in accordance with the Letter Agreement;

C.    Take possession of all bank and other deposit accounts of the Defendants that are derived in whole or part from the Property and the Receivership Estate; open, transfer

3

and change all bank and trade accounts relating to the Property and Receivership Estate, so that all such accounts are in the name of the Receiver; and make disbursements in payment of expenses incurred by the Receiver in accordance with this Order;

        D.    Employ, supervise, discharge and pay all servants, employees, contractors, managers, accountants, attorneys, and other professionals the Receiver deems necessary or advisable to properly Manage the Property;

        E.    Borrow from Plaintiff, other creditors of the Defendants, or third parties on an unsecured basis and issue one or more Receiver's Certificates for such indebtedness, and on such other reasonable terms as may be acceptable to the Receiver, funds to meet the capital needs of the Receivership Estate in excess of the income from the Receivership Estate;

        F.    Procure all local, state and federal or other governmental licenses, permits, and pay inspection, or other governmental fees the Receiver deems necessary or advisable to Manage the Property;

        G.    Pay taxes of any sort to the extent such payment may benefit the Assets and Operations, including real property taxes and federal income taxes;

        H.    Purchase and contract for all materials, service supplies and equipment necessary or advisable to Manage the Property.

    9.    All fees and expenses incurred by the Receiver which pertain solely to the Receiver's general office administration and/or overhead, including, but not limited to office supplies, employee wages, taxes, benefits and other charges shall not be paid from the Receivership Estate unless incurred directly and solely for the benefit of the Receivership Estate.

    10.    Within thirty (30) days after qualification hereunder, the Receiver shall file an inventory of all of the Property of which he has taken possession pursuant to this Order.

4

11.    The Receiver shall prepare and serve on all parties monthly interim reports of the condition of the Receivership Estate on or before the twentieth day of each month, for each previous month, unless the Receiver is satisfied that less frequent reporting is necessary or appropriate. At that time and upon prior notice in a Receiver's Report, the Receiver may report bi-monthly or quarterly, but no less often than quarterly. These interim reports shall reflect the Receiver's fees and administrative expenses, including fees and costs of accountants and attorneys authorized by the Court, incurred for each reporting period in the operation and administration of the Receivership Estate. The Receiver shall not be required to, but as reasonably necessary may, follow generally accepted accounting principles, or use auditors or accountants in the preparation of his reports to the Court. Upon service of each statement, the Receiver may disburse from estate funds, if any, the amount of each statement. Notwithstanding periodic payment of fees and expenses, all fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report.

12.    Subject to further order of this Court, and the Letter Agreement, the Receiver shall operate and manage the Property and Receivership Estate. The Receiver may employ such agents, independent contractors, and employees as may be needed to assist Receiver in managing the receivership Property, including, but not limited to, Trigild International, Inc., a company in which the Receiver is an officer and a director, provided the amount of compensation paid to such agents or employees must be comparable to that charged by similar companies for similar services, and Receiver shall pay for them at the ordinary and usual rates out of the funds which shall come into the Receiver's possession and shall do all things and incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and

5

enterprises. No such risk or obligation so incurred shall be the personal risk or obligation of this Receiver, but shall be the risk and obligation of the Receivership Estate. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver are protected and privileged with the same protections of this Court as the Receiver has. In order to avail the agents of the Receiver with these protections and privileges, the Receiver should file a notice of the agency with this Court.

13.     Receiver may request assistance of law enforcement officials when taking possession, or at any other time during the term of the Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership assets.

14.     The Receiver shall take possession from all depositories, banks, brokerages and otherwise, any money on deposit in such institutions belonging to or arising from the operation of the Property or the Receivership Estate, whether such funds be in accounts titled in the name of the Defendants or not, and Receiver may indemnify the institution upon whom such demand is made, and is empowered to open or close any such accounts. Receiver shall deposit monies and funds collected and received in connection with the Receivership Estate at federally-insured banking institutions or savings associations that are not parties to this case. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver pending further orders of this Court.

15.     Any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Property based upon unpaid bills incurred by Defendants. Further, such utilities shall transfer the balance of any deposits held by the utility after payment of sums due from Grand Star to the exclusive control of such Receiver and be prohibited from

6

demanding that the Receiver deposit additional funds in advance to maintain or secure such services. The Receiver shall hand-deliver, or fax, a copy of this Order to all affected utilities within 2 business days after the Receiver files his bond.

16.    Receiver may issue demands in the name of the Receivership upon the United States Postal Service to gain exclusive possession and control of such postal boxes as may have been used by Defendants for the receipt of rent and other mail, and may direct that mail related to the Property and its business be re-directed to Receiver.

17.    The Receiver shall determine upon taking possession of the Property whether in the Receiver's judgment, there is sufficient insurance coverage. With respect to any insurance coverage in existence or obtained, the Receiver and the property management company, if one exists, shall be named as an additional insured on the policies for the period that the Receiver shall be in possession of the Property. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the parties to this lawsuit and shall have thirty (30) calendar days to procure sufficient all-risk and liability insurance on the Property (excluding earthquake, flood, or hurricane insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions from the Court with regard to whether insurance shall be obtained and how it is to be paid for. If consistent with existing law, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

18.    Receiver may hire independent legal counsel if needed by the Receiver, and pay such persons for their services at such rates as the Receiver deems appropriate for the services provided.

7

19.    The Receiver shall not directly or indirectly agree to, or enter into contract, arrangement, or understanding with any party, or agent, or assignee thereof, concerning the following:

a.    The Receiver's role with respect to the Property following a trustee's sale or termination of the case, without specific court permission;

b.    How the Receiver will administer the receivership, or how much the Receiver will charge for services, or pay for services to appropriate and/or approved third parties hired to provide services;

c.    The making of expenditures for any capital improvements to the property. Provided, however, that the Receiver may perform all necessary maintenance and repairs to the Property.

20.    The Plaintiff is directed to promptly notify the Receiver of the names, addresses, and telephone numbers of all parties and their counsel who appear in the action, so that the Receiver may give notice to all parties of any matters affecting the receivership.

21.    Plaintiff will notify the Receiver within 48 hours of any event, of which the Plaintiff has knowledge, that terminates the receivership. Upon receipt by the Receiver of a Trustee's Deed Upon Foreclosure, or notice from Plaintiff that Defendants have cured the defaults existing under Plaintiff's loan documents, or that Plaintiff has accepted a deed in lieu of foreclosure, the Receiver shall turn over possession, custody and control of the Property to either Plaintiff, Defendants, or to the successful purchaser (whichever is appropriate) without further order of this Court. The Receiver shall then be divested of possession, custody and control of the Property and, if consistent with existing law, the Receiver shall have no further liability as to the

8

Property.  Discharge of the Receiver shall require a court order after a properly noticed motion

approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond.

    22.    Instructions in the Event of a Bankruptcy Filing:

        A.    Defendants' Duty to Give Notice of Bankruptcy:

    In the event that a bankruptcy case is filed by or against either Defendant during the

pendency of this Receivership, Defendants must give notice of same to this Court, to all parties,

and to the Receiver, within 24 hours of such bankruptcy filing.

        B.    Receiver's Duties if Bankruptcy is Filed:

    Upon receipt of notice of entry of an order for relief in any bankruptcy case that has been

filed which includes as part of the bankruptcy estate any of the Property or the Receivership

Estate, the Receiver shall do the following:

        1)    Immediately Turn Over the Property if No Relief From Stay and
            Turnover will be Sought:

    The Receiver shall immediately contact the party who obtained the appointment of the

Receiver, and determine whether that party intends to move in the Bankruptcy Court for an order

for both: (a) relief from the automatic stay, and (b) relief from the Receiver's obligation to turn

over the Property (11 U.S.C. section 543).

    If the party indicates no intention to make such a motion, then the Receiver shall

immediately turn over the Property of the appropriate entity (either the trustee in bankruptcy, if

one has been appointed or, if not, then to the debtor in possession), and otherwise comply with

11 U.S.C. section 543.

        2)    Receiver to Remain in Possession and Preserve the Property,
            Pending Resolution of Motion For Relief From Stay and Turnover:

    If the party who obtained the Receivership expresses an intention to seek relief from both

the automatic stay and the Receiver's obligation to turn over the Property, then the Receiver is

9

authorized to remain in possession and preserve the Property pending the outcome of those motions (11 U.S.C. section 543 (a)). The Receiver's authority in this instance to preserve the Property is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may continue to take such actions as may be necessary to comply with otherwise applicable law, including without limitation any law or regulation relating to public safety and welfare. The Receiver may make disbursements, but only those, which are necessary to preserve and protect the Property. The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would effect a material change in circumstances of the Property.

> 3) Receiver is to Turn Over Property if No Motion for Relief From Stay and Turnover is Filed in the Bankruptcy Court Within 10 Court Days After Notice of the Bankruptcy Filing:

Notwithstanding the above, if the party who obtained the receivership fails to file a motion or other appropriate pleading or request for relief within 10 court days after its receipt of notice of the entry of an order for relief in a bankruptcy case relating to the Property, then the Receiver shall immediately turn over the Property to the appropriate entity (either the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. Section 543.

23.  As soon as is practicable after the receivership terminates, the Receiver shall file, serve, and set for hearing in this Court his Final Report and Accounting. Notice must be given to all persons of whom the Receiver is aware who have potential claims against the Receivership Estate. The motion to approve the final report and accounting, and for discharge of the Receiver, shall contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, the net amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the

10

receivership, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the receivership estate. In addition, and notwithstanding the foregoing, the Receiver may seek Court approval, from time to time before the Final Report and Accounting, for interim distribution of proceeds of the Receivership Estate, if in the judgment of the Receiver such interim distribution is appropriate under the facts and circumstances existing at the time of such request.

24.    The Receiver and the parties to this case may at any time apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly. The Court may grant any relief requested by the Receiver for which Court approval is required, without any further notice or hearing, unless an objection to the requested relief is filed with the Court and served on the Receiver, his counsel, if any, and counsel for the Plaintiff within twenty days after filing and service of the Receiver's request.

25.    In the event of an objection to any Receiver's proposed action requiring Court approval hereunder, then the Court shall promptly hold a hearing (if a hearing is necessary) on such objection.

26.    The Receiver may be replaced only by order of this Court.

IT IS FURTHER ORDERED that Defendants, and their respective agents, partners, property managers, employees, assignees, successors, representatives, and all persons acting under, in concert with, or for them, shall do the following:

A.    Turnover of Property:

Relinquish and turn over possession of the Property to the Receiver upon his appointment becoming effective;

11

B.    Turnover of Keys, Books, and Records:

Turn over to the Receiver and direct all managers and other third parties in possession thereof to turn over all keys, leases, books, records, books of account, banking records, statements and cancelled checks, and provide Receiver with all passwords needed to access all records and files maintained on any computer located on the receivership Property, or any other computers on which such information is stored, together with passwords needed to access Defendants' e-mail accounts, and all other business records relating to the Property, wherever located, and in whatever mode maintained.

C.    Turnover of Licenses, Permits, and Taxpayer ID Number:

Turn over to the Receiver all documents which pertain to all licenses, permits, or government approvals relating to the Property and shall immediately advise the Receiver of Federal and State taxpayer identification numbers used in connection with the operation of the Property.

D.    Notification of Insurance:

Immediately advise the Receiver as to the nature and extent of insurance coverage on the Property. Defendants shall immediately name the Receiver as an additional insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the Property. Defendants are prohibited from canceling, reducing, or modifying any and all insurance coverage currently in existence with respect to the Property; and

E.    Turnover of Monies and Security Deposits:

Defendant, and their respective agents, employees, partners, and all other persons in concert with them, shall immediately turn over to the Receiver any monies that are received, or

12

have been received by Defendants that relate in whole or part to the Property or the Receivership Estate.

IT IS FURTHER ORDERED that pending further Order of this Court, the Defendants, and each of them, and their agents, partners, Property managers and employees, and all other persons acting in concert with them who have actual or constructive knowledge of this Order, and their agents and employees, shall not:

A.    Commit Waste:

Defendants shall not commit or permit any waste on the Property or any part thereof, or suffer or commit or permit any act on the Property or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Property or the fixtures presently on the Property or any part thereof;

B.    Collect Revenue:

Defendants shall not demand, collect, receive, discount, or in any other way divert or use any of the revenues or profits from the Property or the Receivership Estate.

C.    Interfere with Receiver:

Defendants shall not directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the  Receiver's possession of and operation or management of the Property;

D.    Transfer or Encumber the Property:

Defendants shall not expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the Property, without prior Court Order; and

E.    Impair Preservation of Property or Plaintiff's Interest:

13

Defendants shall not do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Property, including the rents, or the preservation of Plaintiff's interest in the Property and the rents.

IT IS FURTHER ORDERED that, except by leave of this Court, all lessors, lessees, customers, principals, investors, suppliers, and or creditors seeking to enforce any claim, right, or interest against Defendants, be barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with the Receiver in the conduct of the Receivership Estate, provided however that no person shall be required to do business with the Receiver;

IT IS FURTHER ORDERED that the Receiver is authorized to enter into a temporary license agreement with HFS as provided in the Letter Agreement.

SIGNED AND ENTERED this 19 day of May, 2006.

_____
UNITED STATES DISTRICT JUDGE

14

# Exhibit
# A

****See Notes at bottom of Exhibit A****

## EXHIBIT A

### CATEGORY 1 PROPERTIES - FEE SITES

| Unit # | Pod # | Property Address | County | Fee/ Leasehold |
|---|---|---|---|---|
| 1500261 | 4 | 1300 280 Bypass, Phenix City, AL  36867 | Russell | Fee |
| *1500274 CLOSED | 2 | 816 S. Grant St., Fitzgerald, GA  31750 | Ben Hill | P1: Fee (Bldg) P2: Lshold [SL] (Parking) P3: Lshold [SL] (Parking) |
| 1500326 | 3 | 807 W. 4th St., Adel, GA  31620 | Cook | P1: Fee (Bldg) P2: Lshold [SGL] (Parking Access) |
| 1500380 | 1 | 421 N. Davis Dr., Warner Robins, GA  31093 | Houston | Fee |
| 1500394 | 4 | 812 E. Washington Ave., Ashburn, GA  31714 | Turner | Fee |
| *1500413 | 1 | 899 Forrester Dr., SE, Dawson, GA  31742 | Terrell | Fee |
| 1500630 | 2 | 260 N. Lee St., Forsyth, GA  31029 | Monroe | Fee |
| *1500962 CLOSED | 2 | 1359 Virginia Ave., East Point, GA  30344 | Fulton | Fee |
| *1500996 CLOSED 7.14.2004 | 1 | 538 Hwy. 27 N., a/k/a 190 N. Cobbleton St., Greenville, GA  30222  [RT. 3, Box 1] | Meriwether | Fee |
| 1501018 | 3 | 182 Keys Ferry St., McDonough, GA  30253 | Henry | Fee (Parking Easement part of Ins'd Estate) – No Lease of Parking |
| 1501040 | 3 | 801 North Houston Rd., Warner Robins, GA  31093 | Houston | Fee |
| *1501095 | 3 | 4005 Lexington Rd., Athens, GA  30605 | Clarke | Fee |

| Unit # | Pod # | Property Address | County | Fee/ Leasehold |
|---|---|---|---|---|
| 1501102 | 1 | 2011 Flat Schools Rd. SE, a/k/a 2101 Flat Shoals Rd. SW, Conyers, GA 30094 | Rockdale | Fee |
| *1501174 | 2 | 198 US 441 Bypass, a/k/a 1075 Level Grove Rd., Cornelia, GA 30531 | Habersham | Fee |
| *1501177 | 4 | 4538 Oakwood Rd., Oakwood, GA 30566 | Hall | Fee |
| 1501399 | 1 | 529 N. Claxton Ave., Elba, AL 36323 | Coffee | Fee |
| 1501417 | 2 | 1086 Ross Clark Cir., Dothan, AL 36303 | Houston | Fee |
| 1501439 | 3 | Hwy. 431 N. & Church Route 2, Box 44, Headland, AL 36345 | Henry | Fee |
| 1501446 | 1 | US Hwy. 431 & State Rd. 50, Lafayette, AL 36862 [303 9th Ave. SW-HFS] | Chambers | Fee |
| 1501453 | 2 | 1885 Almon St., a/k/a PO Box 655, Intersection I-20 & Hwy. 9, Heflin, AL 36264 | Cleburne | Fee |
| 1501454 | 2 | Hwy. 52 & Hwy. 167, Hartford, AL 36344 | Geneva | Fee |
| *1501503 | 2 | 1237 West Base Street, Winn Dixie Plaza, Madison, Madison County, FL _____ | Madison | Fee |
| 1501521 | 2 | 1616 NW Hwy. 41, a/k/a US Hwy. 41 N., Jasper, FL 32052 | Hamilton | Fee |
| 1501541 | 1 | N. Commerce St. [10424-HFS], a/k/a Hwy. 27 N. & Commerce St., Summerville, GA 30747 | Chattooga | Fee |
| 1501543 | 2 | 940 Thornton Rd., Lithia Springs, GA 30122 | Douglas | Fee |
| 1501549 | 2 | 3110 Cedartown Hwy. SW, PO Box 70, Lindale, a/k/a Rome, GA 30147 a/k/a 30161 | Floyd | Fee |
| 1501724 | 4 | 412 N. Main St., Saluda, SC 29138 | Saluda | Fee |
| 1501735 | 1 | [725-HFS] Augusta Rd., a/k/a US Hwy. 25 at 23, Edgefield, SC 29824 | Edgefield | Fee |
| 1501743 | 1 | 300 [397-HFS] Lee St., Johnston, SC 29832 | Edgefield | Fee |
| 1501766 | 3 | 2648 Columbia Hwy. N., Aiken, SC 29801 | Aiken | Fee |
| 1501896 | 1 | 1181 [8770-HFS] US Hwy. 27, a/k/a US Hwy. 27, Franklin, GA 30217 | Heard | Fee |
| 1501897 | 4 | 1190 North Park St., Carrollton, GA 30117 | Carroll | Fee |
| 1501898 | 4 | 4201 Hwy. 154, a/k/a 4201 Sharpsburg McCullum Rd., Newnan, GA 30265 | Coweta | Fee |
| *1501899 | 1 | 2278 US Hwy. 78, Tallapoosa, GA 30176 | Haralson | Fee |
| 1501900 | 2 | 587 Carrollton St., Temple, GA 30179 | Carroll | Fee |
| 1501901 | 3 | 552 [555-HFS] Forsyth St., Monticello, GA 31064 | Jasper | Fee |
| 1501902 | 3 | 3056 Jodeco Rd., McDonough, GA 30253 | Henry | Fee |
| 1501968 | 1 | 1612 Hwy. 3, a/k/a 1612 Atlanta Hwy., Auburn, GA 30011 | Barrow | Fee |

| Unit # | Pod # | Property Address | County | Fee/ Leasehold |
|---|---|---|---|---|
| *1501970 | 4 | 643 Athens Road, a/k/a US Hwy 78, W. Lexington, Ogelthorpe County, GA _____ | Ogelthorpe | Fee |

Notes:

1)    Mixed sites that have primary site with building as "fee" and parking and/or access as "leasehold," are on "Fee Site List."

2)    Units marked as "*CLOSED" are not on HFS list

3)    Units marked with "*" are not on HFS list

# Exhibit
# B

MEMO ENDORSED

**ANDREWS**
ATTORNEYS **KURTH** LLP

450 Lexington Avenue
New York, NY 10017
212.850.2800 Phone
212.850.2929 Fax
andrewskurth.com

Lynn E. Judell
212 850.2854 Phone
lynnjudell@andrewskurth.com

May 17, 2006

**BY E-MAIL**

Valerie Morrison, Esq.
Wiley Rein & Fielding LLP
7925 Jones Branch Drive
McLean, VA 22102

Re:    *Wells Fargo Bank, N.A. v. Grand Star, LLC, et al.*
       *Case No. 06 Civ. 3411 (RCC)*

Dear Valerie:

Thank you for the settlement proposal on behalf of Hardee's Food Systems, Inc.
("HFS") set forth in Thomas Lowther's May 11, 2006 letter to me and Gary Miller (the "May 11
letter").

On behalf of Wells Fargo Bank, N.A. as Special Servicer for LaSalle Bank,
National Association, as Indenture Trustee for the Holders of MSDWMC Owner Trust 2001-F1
Notes, Participating Interests and Owner Trust Certificates, and as MSMC Loan Special Servicer
for LaSalle Bank, National Association, as Indenture Trustee for the Holders of MSDWMC
Owner Trust 2003-F1 Notes, Participating Interests and Owner Trust Certificates ("Lender"), we
have been authorized to convey the following agreement in connection with that certain action
filed in the United States District Court of the Southern District of New York (the "Court") in
Case No. 06 CV 3411 (RCC).

As an initial matter, Lender disputes many of the factual statements made in the
May 11 letter concerning the facts surrounding the loan made by Lender to Grand Star LLC and
Grand Star Realty, LLC (collectively, "Grand Star"), and the related franchise agreements. We
will not refute or even address those statements in this letter. However, please be advised that
the Lender reserve all rights in connection with those statements.

For purposes of settlement, Lender agrees to the framework set forth in the May
11 letter, which proposes to distinguish leasehold sites from fee properties.

HPI 11 2006   04:47        JUDGE RICHARD CHSEY                    212 805 7939    P.03/09

Valerie Morrison, Esq.
May 17, 2006
Page 2

1. **Leasehold Sites** (A list of the Leasehold Sites and Fee Sites will be exchanged by the parties within five (5) days of the date hereof.

Upon Lender's receipt of payment in cash of $2,400,000.00 from HFS, Lender will release all of its liens and security interests to the leasehold sites (collectively, the "Leasehold Sites"), the related leases, subleases, and sub-subleases, any furniture, fixtures, inventory, equipment and other personal property located at any of such Leasehold Sites, and the HFS franchise agreements previously or hereafter applicable to any of such Leasehold Sites, excepting: (i) the rights to the consideration paid pursuant to this agreement, (ii) any liens and security interests of Lender in and to all interest, income, dividends, distributions, revenues, profits and earnings thereon or other monies or revenues derived there from, including any monies payable to Grand Star in connection with any disposition of any Principal Agreement (as such term is defined in the Lender's loan documents) and all moneys which may become payable or received under any policy insuring the Collateral (as such term is defined in the Lender's loan documents) or otherwise required to be maintained under the Security Agreement part of the Lender's loan documents (including return of unearned premium), that arise or are received prior to midnight on May 17, 2006 or such other date as mutually agreed to between Lender and HFS (the "Closing"), and (iii) all cash, security deposits (except for lease security deposits with landlords), credit card receipts or other payment intangibles, that arise, are in place and/or are received prior to Closing, the items contained in subparagraphs (ii) and (iii) herein collectively called "Collateral Revenues." Wells Fargo consents to HFS taking over operations of the restaurants at the Leasehold Sites effective midnight on May 17, 2006, subject to the provisions of this agreement.

If there is any equipment formerly owned by Grand Star at any Leasehold Site necessary to the operation of a Fee Site, Lender shall have the right to remove the equipment, unless the equipment is (i) necessary or desirable for the operation, reletting or turning over of any of the Leasehold Sites to the prime landlord or (ii) affixed to the Leasehold Site in a manner such that removal will cause material damage to the Leasehold Site. In case of (i) or (ii), the parties agree to cooperate to resolve that issue. Any such removal shall be at the sole cost and expense of the Receivership Estate (defined below), which cost and expense shall include the cost of repairing damage to the applicable Leasehold Site caused by such removal. Lender may remove POS equipment from Leasehold Sites as and when replaced by HFS if necessary to the Receiver's operation of a fee site.

2. **Fee Sites**

(a)    **Marketing the Fee Sites**

Upon the release of the Lender liens in subparagraph 1 of this agreement above, HFS releases Lender and Lender releases HFS from any and all claims, counterclaims, demands, actions, causes of action, suits, debts, damages, liabilities, losses, penalties, dues, sums of money, accounts, agreements, and obligations of any type whatsoever, in law or equity, whether

NYC.1 51604 6

Valerie Morrison, Esq.
May 17, 2006
Page 3

known or unknown, arising from actions, inactions or circumstances occurring prior to the date of this agreement, except those created or preserved pursuant to this agreement.

For a period ending December 31, 2006, ("HFS Sale Period"), Lender consents to HFS having the exclusive right (subject to the terms of this agreement) to actively market the fee properties subject to the Lender's liens and security interests (collectively, the "Fee Sites") to HFS franchisees for terms of sale reasonably acceptable to HFS and Lender and as customary in the markets where such sales are to take place, provided however, that the net sales proceeds to Lender for any Fee Site to be sold shall be, at minimum, for a certain amount as shall be agreed to by HFS and Lender in advance of any sale of the Fee Sites (the "Base Amount"), and such sales shall be closed with and through a title company chosen by Lender (with the proceeds of sale to be escrowed with such title company pursuant to an escrow agreement acceptable to Lender). Lender agrees to provide its proposed Base Amount for the Fee Sites to HFS within 10 days from the date of its release of Lender liens in subparagraph 1.

The Base Amount will not be disclosed to any party other than HFS, the Lender and the Receiver, including but not limited to prospective purchasers or lenders.

Nothing herein shall prevent the Lender, in its sole and absolute discretion, from agreeing to sell a Fee Site for less than the Base Amount.

During the HFS Sale Period, Lender agrees not to actively market or advertise the Fee Sites for sale to any third party. Notwithstanding the foregoing, nothing herein shall prevent the Lender or Receiver from considering unsolicited offers to purchase one or more Fee Sites during the HFS Sale Period ("Third Party Offer"). If Lender and/or Receiver receives a Third Party Offer for a total amount in excess of the Base Amount for such properties, and HFS does not have such Fee Sites under a signed contract for sale as approved by Lender, Receiver (or its designee) shall have the right to proceed with the sale(s) that are the subject of such Third Party Offer, provided however that nothing in this agreement shall be deemed to be a waiver by HFS of its right to enforce restrictions on sales to a competitor, if any, contained in the deeds. Subject to any confidentiality requirements of such Third Party Offer, Lender or Receiver receiving such Third Party Offer shall use reasonable efforts to provide a copy of such Third Party Offer to HFS. In the event of any such sale by Receiver to a noncompetitor of HFS, HFS agrees, upon the written request of Lender, to execute a written recordable waiver agreement in form and substance acceptable to the title company providing title insurance to the applicable purchaser ("Waiver Agreement"), waiving any and all restrictive covenants for any of the such Fee Sites to be sold contained in any deed or in any franchise agreement, including, without limitation, any use, purchase and non compete covenants and restrictions (collectively, "Covenants and Restrictions"). Nothing contained herein shall be deemed to be an agreement by Lender or Receiver that said Covenants or Restrictions are valid and/or enforceable.

If HFS decides that it is not going to actively market one or more of the Fee Sites during the HFS Sale Period, it shall so notify Lender, and Lender (or its designee) will have the option to actively market and advertise the Fee Sites for sale to any party. In such event, HFS agrees to execute the Waiver Agreement.

Valerie Morrison, Esq.
May 17, 2006
Page 4

Upon the expiration of the Hardee's Sales Period, or upon written notification by HFS to Lender that HFS has ceased active marketing of the Fee Sites, Lender (or its designee) shall have the right to actively market and advertise the Fee Sites for sale to any party, and HFS agrees to execute the Waiver Agreement.

Lender will not pay any commission or other compensation to HFS and/or any real estate broker or any other entity that advertises and/or markets the Fee Sites on behalf of HFS. In addition, the Lender will not provide any financing in connection with the sale of any of the Fee Sites.

Upon Lender's receipt of the full net sales proceeds in cash for the sale of any the Fee Sites on the date of closing thereof, for an amount equal to or greater than the Base Amount, Lender will, upon closing of such sale, release its liens and security interests relating to the Fee Sites sold, excepting the Collateral Revenues.

(b)   **Operation and Management of the Fee Sites**.

Lender and HFS consent to the immediate appointment of William J. Hoffman as Receiver to operate the Fee Sites and any Collateral not released pursuant to subparagraph 1 above in a receivership (the "Receivership Estate"). Upon the Receiver's appointment, HFS grants the Receiver a limited license to operate the Fee Sites as "Hardee's" restaurants until July 15, 2007, unless earlier terminated pursuant to the terms of this agreement. The terms of the limited license shall be set forth in a temporary license agreement to be executed by the receiver within ten days after authorization from the court. The temporary license agreement shall not include any Covenants and Restrictions and shall be subject to the approval of Wells Fargo and the Receiver. The Receiver will be permitted to operate the Fee Sites as Hardee's restaurants during such 10 day period, subject to the general operating requirements of HFS.

(i)   Notwithstanding any other provision herein, for any Fee Sites the Receiver elects to operate as a "Hardee's" restaurant, Receiver shall operate such Fee Sites in accordance with standards, policies and procedures set forth in the temporary license agreement and the Hardee's Operations Manual (collectively, "Policies and Procedures") as such Policies and Procedures are applicable with respect to the operations of the restaurants while they are being operated as "Hardee's" restaurants. Such Policies and Procedures shall not include any Covenants and Restrictions and shall be modified as set forth in this agreement.

(ii)   For any Fee Sites that Receiver elects to operate as "Hardee's" restaurants, Receiver shall pay to HFS the standard advertising and royalty fees (or such reduced fees as HFS may agree to in its sole discretion) for such Fee Sites for so long as the Receiver operates such restaurants.

(iii)   In no event shall the Receiver be obligated to pay any past due amounts owed by Grand Star or be required to make any improvements or upgrades of any of the Fee Sites, but the Receiver shall be required to perform necessary repairs and maintenance at any operating Hardee's restaurant at a Fee Site.

Valerie Morrison. Esq.
May 17, 2006
Page 5

   (iv) HFS shall have the right to terminate the temporary license if the Receiver fails to cure a monetary default under such temporary license within ten (10) days after written notice thereof from HFS to Lender and Receiver. HFS shall have the right to terminate the temporary license with respect to an "Affected Fee Site" if the Receiver fails to cure a non-monetary default under such temporary license with respect to a Fee Site (the "Affected Fee Site") within thirty (30) days after written notice thereof from HFS to Lender and Receiver, provided that with respect to such non-monetary default, if such default is not curable within such thirty (30) day period, such cure period shall be extended and continue for so long as Receiver is diligently pursuing the cure of same.

   Notwithstanding anything contained in this agreement to the contrary, the Receiver shall not be required to keep any Fee Site open and operating. However, in the event the Receiver, with the agreement of the Lender, decides to close a Fee Site, the Receiver shall provide HFS advance written notice of the intended closure.

   In the event that a Fee Site is closed by the Receiver, the Receiver agrees to give HFS access to "de-identify" the Fee Site(s) at HFS' expense (including the cost of repairs if any necessitated by the de-identification) by removing any personal property reasonably necessary to remove the name "Hardee's" or other Hardee's marks, and by returning any Hardee's operating manuals to HFS, all of which shall be deemed to be the property of HFS free and clear of Lender's liens and security interests.

   If a Fee Site(s) is under contract to be sold to an HFS franchisee during the HFS Sale Period, the Receiver will operate the Fee Site(s) in accordance with the terms of the approved sale contract.

### 3. Mutual Releases

   Upon the final sale of the last remaining Fee Site, Lender and HFS shall execute mutual limited releases, relating to Grand Star matters.

   The terms and conditions of this agreement shall become effective upon entry of an order approving this agreement in its entirety by the Court.

### 4. Payroll and Other Obligations of Grand Star Arising Prior to Closing

   The parties acknowledge that Grand Star conditioned its consent to the appointment of a receiver on the resolution of certain issues. Wells Fargo and HFS have not reached any agreement or understanding with respect to the issues raised by Grand Star.

Valerie Morrison, Esq.
May 17, 2006
Page 6

Very truly yours,

Lynn E. Judell

Lynn E. Judell

Agreed:

WELLS FARGO BANK, N.A. AS SPECIAL SERVICER FOR LASALLE BANK, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE

By: _____
Name _____
Its:_____

HARDEE'S FOOD SYSTEMS, INC. AND FLAGSTAR ENTERPRISES, INC.

By: _____
    William R. Werner
    General Counsel and Senior Vice President

cc:   Gary C. Miller, Esq.
      Peter Klarfeld, Esq.
      William Werner, Esq.

NYC-1514045

Valerie Morrison, Esq.
May 17, 2006
Page 6

Very truly yours,

Lynn E. Judell

Agreed:

WELLS FARGO BANK, N.A. AS SPECIAL SERVICER FOR LASALLE BANK,
NATIONAL ASSOCIATION, AS   INDENTURE TRUSTEE

By: _____
Name    James Kendrick Noble III
Its: _____ Managing Director _____

HARDEE'S FOOD SYSTEMS, INC. AND FLAGSTAR ENTERPRISES, INC.

By: _____
        William R. Werner
        General Counsel and Senior Vice President

cc:    Gary C. Miller, Esq.
       Peter Klarfeld, Esq.
       William Werner, Esq.

NYC:151596.5

Valerie Morrison, Esq.
May 17, 2006
Page 6

Very truly yours,

Lynn E. Judell

Agreed:

WELLS FARGO BANK, N.A. AS SPECIAL SERVICER FOR LASALLE BANK,
NATIONAL ASSOCIATION, AS   INDENTURE TRUSTEE

By:
Name
Its:

HARDEE'S FOOD SYSTEMS, INC. AND FLAGSTAR ENTERPRISES, INC.

By:

William R. Werner
General Counsel and Senior Vice President

cc:    Gary C. Miller, Esq.
Peter Klarfeld, Esq.
William Werner, Esq.

The Court is satisfied that this letter agreement by its terms resolves Plaintiff's motion for the
appointment of a receiver and that such motion is now moot.

**So ordered:** May 17, 2006

Richard Conway Casey, U.S.D.J.

NYC:151596.5

# Exhibit
# C

# TRIGILD

Bill Hoffman and his Trigild Project Team have handled hundreds of Receivership appointments for a wide spectrum of properties and businesses throughout the country. They quickly take control not only of the principal asset, but also vital legal rights like liquor licenses, franchise agreements, and equipment leases that are critical to the overall value of the asset.

As Receiver, Bill Hoffman and his Trigild Project Team perform the following actions:

- Prepare a Proposed Order Appointing Receiver to assure that all contingencies are addressed by the court in the first hearing.

- Prepare and file all Receiver's documents; serving all appropriate parties. These include opening, interim and closing reports.

- Take possession of, and account for all bank accounts, cash banks, petty cash and all other moneys and securities. Secure all financial records, sales materials, furniture, fixtures & equipment and inventory.

- Take control of all administration keys, change locks and safe combinations where necessary. Implementing key control program.

- Reviewing various business matters such as government permits, licenses, room tax payments, liquor licenses and franchise agreements. Transferring licenses as appropriate. Determining adequate insurance coverage and placement as needed.

- Identifying and addressing any immediate potential liability or safety risks.

- Notifying all utilities, vendors and service contractors of the Receivership action and change of management. Auditing accounts receivable and accounts payable.

- Upon foreclosure, quickly winding up the receivership, preparing the final accounting and report, transferring licenses and franchises to new owner, and securing the court's approval and discharge.

## Receiver Fees

| | |
|---|---|
| William J. Hoffman, Esq. | S 225 |
| Vice President | S 165 |
| Paralegal | S 90 |
| Regional Manager | S 90 |
| Clerical Support | S 35 |

These fees are for receiver-related work only, and management-related work is covered under the management contract and fee. Relating to Receiver fees, we attempt to use the most cost-effective person for each task in order to keep costs down. Travel time by airline or train, which may allow time for other work, is billed at half-rate. Auto travel time is billed at full rate. Direct expenses are billed as incurred.